**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| **BILLY BROWN,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 3:14-cv-00041-PPS-CAN** |
| **ALERIS SPECIFICATION ALLOYS, INC. and WABASH ALLOYS, LLC,** | |
| **Defendant.** | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Defendant Aleris Specification Alloys, Inc. ("Aleris")[1] respectfully submits this Reply in Support of its Motion for Summary Judgment. Plaintiff Billy Brown ("Brown") earned nearly $100,000 per year – a regular salary significantly higher than the $455.00 per week required to classify him as an executive employee exempt from the overtime provisions of the Fair Labor Standards Act ("FLSA"). Aleris did not reduce Brown's salary based on the number of hours he recorded; it only *increased* his compensation if he worked more than 80 hours in a pay period. Brown concedes he "customarily and regularly direct[ed] the work of two or more other employees." Brown's primary responsibility as a Production Supervisor was management of the ingot metal production line, a recognized subdivision within the Wabash facility. Within the facility's union environment, Brown's personnel recommendations also received significant weight. For these reasons, in addition to the arguments included in Aleris' Brief in Support of its

---

[1] Wabash Alloys, LLC, formerly a subsidiary of Aleris International, Inc., was liquidated as part of Aleris International, Inc.'s emergence from bankruptcy effective June 1, 2010. Thus, Wabash Alloys, LLC no longer exists as a legal entity. In addition, effective February 2015, Aleris Specification Alloys, Inc. became known as Real Alloy Specification, Inc. For the purposes of this motion, we will refer to the Defendant as "Aleris."

Motion for Summary Judgment (Dkt. #31), Aleris properly qualified Brown as an executive employee exempt from the overtime provisions of the FLSA and Brown is not entitled to any additional compensation. There are no outstanding material factual disputes and Aleris is entitled to summary judgment.

I.     ARGUMENT

     *A.       Brown's responsibilities meet the regulatory definition of management.*

Contrary to Brown's argument, management-level production-line employees are expressly identified in the relevant regulation as employees who may properly be classified as exempt executives. *See* 29 C.F.R. § 541.3(a) ("*[N]on-management* production-line employees . . . are entitled to minimum wage and overtime premium pay under the Fair Labor Standards Act.") (emphasis added).  Thus, only non-managerial production employees are entitled to hourly and overtime compensation. *Id.*

Brown's primary duties were managerial. *See* 29 C.F.R. § 541.102; Dkt. #31, pp. 12-19; Dkt. #33, pp. 3-4.[2] His concurrent performance of manual labor does not affect his exempt status, because manual tasks were not his *primary* responsibility. (Brown Dep. at 123:6-9, Exs. E, G; Russell Dep. 20:16-18). He performed physical tasks as a function of his primary responsibility, to supervise and ensure the continuing function of the ingot production line. (Brown Dep. at 117:13-14, 118:16-119:6; Russell Dep. 19:24-20:3). As a management-level Production Supervisor, Brown is expressly excluded from the class of "blue collar" workers

---

[2] To the extent Brown argues now that his job description is not a reliable record of the duties he performed (Dkt. #35, p. 9), his testimony proves otherwise. He confirmed after reviewing his job description that it accurately represented the work he performed as a Production Supervisor. (Brown Dep. at 50:7-20) (Q: "And is it accurate that the responsibilities included are those responsibilities that you performed as a production supervisor?" A: "Yes.").

ineligible for the executive exemption, as described in 29 C.F.R. Section 541.3(a) and Brown's repeated argument to the contrary is unavailing.

### B.      Brown earned a regular salary well above $455 per week.

An exempt executive employee must receive a salary of at least $455.00 per week (approximately $23,000.00 per year). 29 C.F.R. § 541.100(a)(1). An employee is paid on a salary basis if "he regularly receives each pay period  . . . a predetermined amount constituting all *or part* of his compensation, which amount is not subject to *reduction* because of variations in the quality or quantity of work performed." *Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 370 (7th Cir. 2005) (emphasis added).

The *Kennedy* plaintiffs, salaried workers in a nuclear power plant, argued unsuccessfully that because the defendant "tracked employee time and sometimes paid the plaintiffs *more* than their listed salaries, the resulting upward fluctuations must mean that they were hourly workers." *Id.* The court dismissed this argument, holding that additional compensation did not disqualify an employee from an exempt status. Rather, consistent with the language in the regulation, only *reductions* from a salary could cause an exemption to be lost. *Id.* at 370-371. The *Kennedy* court specifically noted "For obvious reasons, the DOL is concerned more with reductions in a salaried employee's wages that are correlated with the number of hours worked than it is with increases." *Id.* at 370-371 (citing Wage-Hour Op. Ltr. No. 1738 (April 6, 1995) ("Extra compensation may be paid for overtime to an exempt employee on any basis. The overtime payment need not be at time and one-half, but may be at straight time, or at one-half time, or flat sum, or any other basis.").

In *Mich. Ass'n of Gov't Employees v. Mich. Dept. of Corrs.*, 992 F.2d 82, 84 (6th Cir. 1993), the Sixth Circuit likewise observed that receiving additional compensation for work in

excess of eighty hours in a two-week period "does not jeopardize salaried status as defined by the regulations." 992 F.2d at 84 n.3 (citing *Brock v. The Claridge Hotel and Casino*, 846 F.2d 180 (3rd Cir. 1988).[3] The *Michigan* court noted:

> The principal regulation requires that the predetermined amount constitute "all or **part**" of the compensation and specifically prohibits "**reduction** because of variations in the quality or quantity of [the] work performed." 29 C.F.R. § 541.118(a)(2) (emphasis added). Increases in compensation because of variations in quantity of work are not prohibited. Moreover, additional pay at an hourly rate for each hour worked beyond an employee's regular schedule is expressly permitted by 29 C.F.R. § 541.118(b).

*Id.* (emphasis original) (citing *York v. City of Wichita Falls, Texas*, 944 F.2d 236, 242 (5th Cir. 1991); *Hartman v. Arlington County, Virginia*, 720 F. Supp. 1227, 1228 (E.D. Va. 1989), *aff'd* on reasoning of lower court, 903 F.2d 290 (4th Cir. 1990)).

Brown's compensation structure was similar to the unsuccessful plaintiffs' compensation structures in *Kennedy* and *Michigan*. As in *Kennedy* and *Michigan*, Brown's salary was not calculated on an hourly basis. Instead, the opposite was true: Brown received a set bi-weekly salary and his straight hourly rate for time worked *over* 80 hours in a two week period was calculated based on his base salary. (Parson Decl. ¶8). Also as in *Kennedy* and *Michigan*, Aleris never reduced Brown's compensation below his regular salary. (Parson Decl. Ex. A). During Parson's deposition, Brown's counsel presented Parson with one of Brown's earning statements from 2008 and asked her to speculate about the relationship between the hours worked and the compensation earned on the statement. (Deposition of Joy Parson ("Parson Dep.") at 11:3-14:2).

---

[3] In *Brock*, the Third Circuit addressed the "reduction" issue discussed in 29 C.F.R. § 541.100(a)(1). There, plaintiff hotel and casino supervisors were guaranteed a certain number of hours at a specific hourly rate to ensure they received the precise amount of wages required to qualify for the executive exemption. 846 F.2d at 187. The court determined this method did not meet the FLSA's salary requirement because it was still based on the hourly work the employees performed and could be subject to reduction if the employee did not work the minimum number of hours. *Id.* Thus, the minimum hours/wages guarantee's "status as a salary was illusory." *Id.*

4

Based on this exchange, Brown attempts to extrapolate that his salary was docked if he did not complete a full work week. (Dkt. #36, p. 2).

Brown insists on his position despite Parson's clarifying testimony and undisputed record evidence to the contrary. Parson clarified her testimony during her deposition:

Q:      If an exempt employee worked less than 40 hours, would they still be paid their salaried amount?

A.      Yes.

Q:      All right. So I want to clear up, earlier you testified that if somebody worked fewer than 40, they would not receive their normal pay. Do you remember that?

A:      Yes.

Q:      And you were referring then to nonexempt employees?

A:      Nonexempt.

(Parson Dep. at 14:17-15:5). Parson's testimony does not create an issue of material fact; she simply misspoke and then clarified the error. Brown's salary was not reduced based on the number of hours he worked. (Parson Decl. Ex. A). Indeed, Brown's authenticated earning statements – which Brown does not refute – provide conclusive evidence Brown never earned less than his regular salary during the relevant time period from 2011 through his termination. (*Id.*). Brown earned a regular salary significantly higher than the required $455.00 per week. Brown's continued insistence that he did not earn a "true" salary because he regularly earned more than his base salary is incorrect as a matter of law.

### C.      *The ingot line is a customarily recognized department or subdivision.*

An exempt executive also must "Have the primary duty of management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof." 29 C.F.R. § 541.100(a)(2).

> A customarily recognized department or subdivision is intended to distinguish between a mere collection of employees assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. A customarily recognized department or subdivision must have a permanent status and a continuing function.

29 C.F.R. § 541.103(a). A work shift can constitute a department or subdivision. *West v. Anne Arundel County, Md.*, 137 F.3d 752 (4th Cir. 1998); *Molina v. Sea Land Services Inc.*, 2 F.Supp.2d 185 (D. P.R. 1998). In addition, "groupings" or "teams" of employees may constitute a department or subdivision. 69 Fed. Reg. 22134 (Aug. 23, 2004) (citing *Gorman v. Continental Can Co.*, 1985 WL 5208, at *6 (N.D. Ill. 1985)); Preamble to 29 C.F.R. § 541.

The ingot line of Aleris's Wabash facility is a customarily recognized department or subdivision as a matter of law. (Dkt. #31, p. 11-12). The ingot line is one of two primary production functions – ingot and molten metal – at the facility (Brown Dep. at 22:22-23:24). The ingot line is distinct from the molten line. *Id.* Brown performed the same supervisory role over ingot line shifts for more than 30 years. (Brown Dep. 12:13-15; 23:19-24:23). Neither the job nor the department changed during that period. Each time he supervised a particular shift, Brown supervised a distinct subdivision of the ingot line. *See West*, 137 F.3d 752; *Molina*, 2 F.Supp.2d 185.

Brown asserts the ingot line is not a customarily recognized department or subdivision of Aleris because it "was connected to other parts of the facility," affected other departments within the facility, and shared a class of employees with other areas of the facility. (Dkt. #36, p. 3). The

6

regulations explicitly state none of these scenarios affects whether the ingot line is a recognized department or subdivision. First, the regulations specifically provide "An otherwise exempt employee will not lose the exemption merely because the employee draws and supervises workers from a pool or supervises a team of workers drawn from other recognized units…" 29 C.F.R. § 541.103(d). Brown shared supervision of the UTOs only the extent he and other supervisors determined whether Brown or another supervisor had more need for a UTO at a specific period. (Brown Dep. 30:8-20, 46:15-18). When the UTO worked in Brown's department on Brown's shift, Brown supervised the employee. Likewise, when the UTO worked elsewhere, a different supervisor managed that employee.  Second, a department may affect work in other parts of a facility without losing its designation. 69 Fed. Reg. 22134 (Aug. 23, 2004) (citing *Gorman*, 1985 WL 5208, at *6 (department or subdivision can ''include small groups of employees working on a related project within a larger department, such as a group leader of four draftsmen in the gauge section of a much larger department'')). Accordingly, there are no disputed material facts regarding whether the ingot line is a customarily recognized department or subdivision of the Wabash facility.

>    **D.**     ***Brown had significant influence over personnel decisions.***

Finally, an exempt executive must either have "the authority to hire or fire other employees" or his "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight." 29 C.F.R. § 541.100(a)(4). An employee's suggestions and recommendations may be deemed to have "particular weight" in workplaces where a higher level manager's recommendation has more importance, where the employee does not have authority to make the ultimate decision as to the employee's change in status, and where hiring and firing is controlled by a separate

institution, such as a staffing agency or a union. *Schreckenbach v. Tenaris Coiled Tubes, L.L.C.*, 2013 U.S. LEXIS 6744 at \*19 (S.D. Tex. 2013); *Haas v. Behr Dayton Thermal Prods., LLC*, 2008 U.S.LEXIS 122184 at \*82 (S.D. Ohio 2008); *Beauchamp v. Flex-n-Gate, LLC*, 357 F.Supp. 2d 1010, 1016 (E.D. Mich. 2005).

There can be no genuine dispute that, within Aleris's union environment, Brown's personnel recommendations were given significant weight. (Dkt. #31, pp. 19-21). The union structure at Aleris is explained in detail in Defendant's Motion for Summary Judgment. (*Id.*) Plant Manager Tony Whitt testified regarding the very limited role executives play in personnel decisions at Aleris as a result of the Collective Bargaining Agreement ("CBA"). In his Response, Brown deduces from Whitt's deposition testimony, "Brown played no role in establishing employees' pay rate or determining whether employees would receive a raise." (Dkt. #36, p. 5). However, the cited testimony  actually states Brown's role was only limited because pay rates and raises were set pursuant to the CBA and not by any executive at any level. (Deposition of Tony Whitt ("Whitt Dep.") at 15:3-10). Likewise, Brown cites Whitt's deposition for the proposition Brown "played no role in determining if employees were promoted." (Dkt. #36, p. 5). Again, the cited testimony states Brown did not play this role because promotions were determined pursuant to the terms of the CBA and not because Brown was not a managerial employee. (Whitt Dep. at 13:15-23).

Despite executives' limited control over most personnel decisions, Brown exercised authority which ultimately had significant impact on personnel decisions. As noted in Defendant's Motion for Summary Judgment, Brown had authority to request additional manpower for his line (Brown Dep., Ex. E; Whitt Decl. ¶8); train new employees (Brown Dep. 25:11-26:1, 124:3-13, Ex. G); independently resolve employee complaints (Brown Dep. 49:15-

22, Exs. E, G); validate new employees' skills confirmation sheet to management (Whitt Dep. 14:6-12); provide feedback regarding employee performance (Brown Dep. 110:18-22, Exs. E, G); administer progressive discipline (Brown Dep. 49:23-50:1, Exs. E, G); and suspend employees while the organization considered termination (*Id.*). In the context of Aleris's union environment, Brown had significant influence over personnel decisions.

## III.    CONCLUSION

Aleris is entitled to summary judgment. Brown is an exempt employee under the FLSA not entitled to any additional compensation. For these reasons, Aleris respectfully requests that the Court grant Defendant's Motion for Summary Judgment.

Respectfully submitted,


/ s / *Alan L. McLaughlin*
Alan L. McLaughlin (#10182-49)
Emily L. Connor (#27402-49)

LITTLER MENDELSON, P.C.
111 Monument Circle, Suite 702          *Attorneys for Defendant Aleris specification*
Indianapolis, IN 46204                  *Alloys, Inc. and Wabash Alloys, LLC*
Telephone: 317.287.3600
Facsimile:  317.636.0712
E-mail: amclaughlin@littler.com
        econnor@littler.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this 10th day of November, 2015, filed a copy of the foregoing *Defendant's Reply in Support of Motion for Summary Judgment* electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

William A. Ramsey
Barrett McNagny
215 East Berry Street
Fort Wayne, Indiana 46802
war@barrettlaw.com


*/ s / Alan L. McLaughlin*
Alan L. McLaughlin


Firmwide:136618986.4 062136.1057